**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| SCHOENECKERS, INC., d/b/a BI WORLDWIDE, <br><br>             Plaintiff, <br><br> v. <br><br> ITA GROUP, INC., <br><br>             Defendant. | Case No. 4:25-cv-00002-SMR-HCA |

**DEFENDANT ITA GROUP, INC.'S BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS UNDER RULE 12(B)(6)**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 3

BACKGROUND FACTS ............................................................................................. 3

LEGAL STANDARDS ................................................................................................. 7

ARGUMENT ................................................................................................................. 9

   I.  The Complaint Does Not State a Plausible Claim for Direct Patent Infringement . 10

      A.   The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '764 Patent—Count 1 of the Complaint ................................................... 11

      B.   The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '421 Patent—Count 2 of the Complaint ................................................... 17

      C.   The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '339 Patent—Count 3 of the Complaint ................................................... 19

   II.  The Complaint Does Not State a Plausible Claim for Indirect Patent Infringement 22

CONCLUSION .......................................................................................................... 22

## INTRODUCTION

The Complaint filed by Plaintiff Schoeneckers, Inc., d/b/a BI Worldwide ("BI Worldwide") claiming patent infringement against Defendant ITA Group, Inc. ("ITA Group") consists of a combination of two things that several other courts have determined are insufficient to state plausible claims for patent infringement. It consists of: (1) conclusory allegations in the body of the Complaint combined with (2) attached claim charts that recite the language of the claim descriptions in the patents followed by screenshots of web content without any articulation or other demonstration as to how the screenshots show patent infringement. Other courts analyzing similar complaints for patent infringement have concluded that this amounts to the formulaic, threadbare style of pleading that does not meet the Supreme Court's *Twombly/Iqbal* plausibility standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And now, this Court should reach the same conclusion with respect to BI Worldwide's Complaint, especially in light of the relative complexity of the technology involved and the materiality of certain claim limitations that BI Worldwide's Complaint neglects.

## BACKGROUND FACTS

The following facts are those alleged in the Complaint and treated as true for purposes of ITA Group's motion to dismiss. *See Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020).

BI Worldwide owns three patents by virtue of its acquisition of Bunchball, Inc. in 2018:

    (1)    U.S Patent No. 8,768,764 (the '764 Patent);

    (2)    U.S. Patent No. 9,779,421 (the '421 Patent); and

    (3)    U.S. Patent No. 11,501,339 (the '339 Patent) (collectively, the "Patents").

Doc. 1, at 2 ¶ 9. Bunchball Inc. developed the Patents from its research in the field of website-based incentive systems. *Id*. at 3 ¶ 10. Bunchball recognized that early online incentive programs required each website to independently develop its incentive software program and that incentive software programs were not easily customizable once they were written for a particular website. *See id*. This, BI Worldwide says, led Bunchball to develop an incentive application that is "portable" to multiple websites and "customizable" on each website. *See id*.

Back in 2007, Bunchball launched its Nitro platform, which incorporates the technology described in the Patents. *See id*. at 3 ¶ 11. Since then, Bunchball Nitro has become a leading enterprise gamification platform, and BI Worldwide has continued to operate the platform after acquiring Bunchball, Inc. in 2018. *See id*.

On January 8, 2025, BI Worldwide filed the Complaint, claiming ITA Group directly and indirectly infringed the Patents, both literally and under the doctrine of equivalents. *See id*., at 4–10. To support its claims, BI Worldwide's Complaint alleged that ITA Group "uses and sells a gamification platform that incentivizes employees to use its websites" and that the "platform directly competes with the Bunchball Nitro platform and infringes the patents-in-suit." *See id*. at 3 ¶ 12. Other than these perfunctory allegations, however, the Complaint does not articulate any other facts supporting BI Worldwide's infringement claims. *See id*. at 2–10. Instead, the Complaint makes a series of conclusory allegations that ITA Group's "platform" and "system" infringe the Patents and then generically references three separate claim charts—one chart for each of the Patents. *See id*. (citing Docs. 1-4, 1-5, & 1-6). The Complaint also summarily references an "infographic" and several "printouts" from ITA Group's webpages. *See id*. (citing Docs. 1-8, 1-9, 1-10, 1-11, & 1-12).

The three claim charts add little to the Complaint's conclusory infringement allegations. *See* Docs. 1-4, 1-5, & 1-6. These charts consist of three components divided into three columns: (1) the claim number of the respective patent, (2) the corresponding claim description, and (3) a repetitive recitation of the claim description followed by a screenshot of a part of an ITA Group webpage, without any explanation of how the screenshot plausibly shows infringement. *See* Docs. 1-4, 1-5, & 1-6. For example, the first part of the claim chart for the '764 Patent shows:



Infringement of U.S. Patent No. 8,768,764 by ITA Group

| Claim No. | Claim | ITA Group Infringement |
|---|---|---|
| 10[p] | 10. A method comprising | ITA Group's system practices the following method. |
| 10[a] | providing an incentive application from a network site over a data network to a first Web site and a second Web site, wherein the network site is operating on a computer system and wherein the first and second Web sites are operating on different computer systems, the incentive application to be embedded in the first Web site and the second Web site, respectively; | ITA Group's system provides incentive applications from a network site over data networks to web sites. The network site is operating on a computer system and the web sites operate on different computer systems. The incentive application is embedded in the web sites. *See* Exhibit I; https://www.itagroup.com/what-we-do/customer-solutions/customer-solutions-technology |

Doc. 1-4, at 2 (highlighting added for emphasis). The first two columns provide no information other than the information contained in the '764 Patent's claims—the claim number and the corresponding claim description. *See id*. The third column then provides a repetitive recitation of the claim description followed by a screenshot of part of an ITA Group webpage. *See id*. Other than looping in references to ITA Group's "system," the third column tracks the language of the claim description almost verbatim. *See id*. This part of the claim chart is largely representative of the rest of the claim charts. *See* Docs. 1-4, 1-5, & 1-6. And it contains no information except a

claim description followed by a screenshot of part of an ITA Group webpage, without any articulation or other demonstration of how the screenshot plausibly shows infringement. *See id*.

The "infographic" and "printouts" from ITA Group's webpages summarily referenced by the Complaint also add little information to the Complaint's conclusory infringement allegations. *See* Docs. 1-8, 1-9, 1-10, 1-11, & 1-12. In paragraph 12, the Complaint alleges ITA Group's "platform directly competes with the Bunchball Nitro platform and infringes the patents-in-suit." Doc. 1, at 3 ¶ 12. Paragraph 12 then summarily references an infographic and webpage printouts from ITA Group webpages, without ever explaining or otherwise demonstrating how these things plausibly show infringement. *See id*. (citing Docs. 1-8, 1-9, 1-10, 1-11, & 1-12).

With respect to indirect infringement, the Complaint alleges that ITA Group's platform "encourages [ITA Group's] customers to use the platform in a way that results in infringement of the [Patents] by selling access to the platform" and that "there is no substantial use for the platform that does not infringe the [Patents]." *See id*. at 5–9 ¶¶ 27, 42, 59. The Complaint does not otherwise specifically allege that ITA Group's customers have in fact used the accused products in an infringing manner. *See* Doc. 1. Nor does the Complaint specify what "encouragement" ITA Group provides or has provided to its customers that would instruct them to use the allegedly infringing technology. *Id*. And before filing of the complaint, the only communication that BI Worldwide sent to ITA Group about the Patents was a short, conclusory letter asserting that "ITA Group is making, using, selling, and/or offering for sale a customer loyalty platform" and that ITA Group's patent counsel should analyze the Patents, particularly "claim 10 of the '764 patent, claim 12 of the '421 patent, and claim 22 of the '339 patent," to determine whether ITA Group infringes the Patents. *See* Doc. 1-7.

Now, because the allegations, claim charts, and other exhibits attached to the Complaint are conclusory and do not plausibly show that ITA Group infringes the Patents, ITA Group moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARDS

The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals of patent cases, like this one. 28 U.S.C. § 1295(a). Even so, the Federal Circuit applies "the law of the regional circuit" to motions to dismiss for failure to state a claim under Rule 12(b)(6). *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Eighth Circuit law therefore applies to ITA Group's motion to dismiss. *See id.*; *Guntert & Zimmerman Constr. Div., Inc. v. Gomaco Corp.*, No. 20-CV-4007-CJW-KEM, 2024 WL 5453478, at *4 (S.D. Iowa Sept. 27, 2024) ("[B]ecause motions to dismiss under Rule 12(b)(6) raise purely procedural issues, courts apply the law of the regional circuit . . . when deciding whether such a motion should be granted.") (quoting *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 498 (W.D. Tex. 2023)).

Rule 8 of the Federal Rules of Civil Procedure requires the complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Overly-detailed factual allegations are not necessary, but to survive a Rule 12(b)(6) motion, the facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts must state a claim to relief that is facially plausible. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vigeant v. Meek*, 953 F.3d 1022, 1024 (8th Cir.

2020) (quoting *Iqbal*, 556 U.S. at 678). Stating "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

This plausibility "standard requires the plaintiff to allege 'more than a sheer possibility that a defendant has acted unlawfully.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678) (emphasis added). Where the plaintiff's "complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In assessing plausibility, the Court is required to treat only the complaint's "specific factual allegations" as true. *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020). Legal conclusions and "naked assertions" lacking "further factual enhancement" should be disregarded. *See Iqbal*, 556 U.S. at 678-79 (alterations and internal quotation marks omitted) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Guntert*, 2024 WL 5453478, at *4 (quoting *Mickelson v. Cnty. Of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016)).

In the patent infringement context, "[a] plaintiff cannot assert a plausible claim for [patent] infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Guntert*, 2024 WL 5453478, at *5 (quoting *Bot M8*, 4 F.4th at 1353). While the plaintiff does not need to plead infringement "on an element-by-element basis to survive a motion to dismiss under Rule 12(b)(6), . . . 'there must be

some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *Id*. (quoting *Bot M8*, 4 F.4th at 1353). And "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. That is, the more complex the technology and the infringement theories, the more detailed the allegations in the complaint must be under Rule 8's plausibility standard.

## ARGUMENT

The Court should dismiss the Complaint because it does not allege enough facts to plausibly show that ITA Group directly or indirectly infringed the Patents, either literally or under the doctrine of equivalents. That is, the Complaint does not contain sufficient "factual allegations that, when taken as true, *articulate* why it is plausible that [ITA Group] infringes the [Patents]." *Bot M8*, 4 F.4th at 1353 (emphasis added). Instead, the Complaint makes a series of conclusory allegations that ITA Group's "platform" and "system" infringe the Patents and then generically references claim charts, an infographic, and webpage printouts that contain no *articulation* of infringement. The claim charts simply reiterate the Patents' claim descriptions and insert screenshots of ITA Group webpages, leaving the Court to compare the claim descriptions to the screenshots and decide whether infringement is plausible. This falls short of the *Iqbal*/*Twombly* plausibility standard and merits dismissal of the Complaint under Rule 12(b)(6). *See id*. (stating "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements").

"To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Dynacore Holdings Corp. v. U.S.*

*Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004). Patent infringement can be direct or indirect. *See id.* It is direct when "all steps of a claimed method are performed by or attributable to a single entity," usually the defendant. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). And it is indirect when the defendant's "actions led to direct infringement." *See Dynacore*, 363 F.3d at 1274.

Ultimately, patent infringement is primarily determined by analyzing whether there is literal infringement, i.e., "whether the accused subject matter falls within the scope of the claims as literally written." *See NexStep, Inc. v. Comcast Cable Comms., LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (internal quotation marks omitted). To prove literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal quotation marks omitted).

The doctrine of equivalents is a "limited exception" to literal infringement. *See NexStep*, 119 F.4th at 1355. "Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.'" *Id.* (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)).

Here, the Complaint does not allege enough factual content to support plausible direct or indirect patent infringement claims, either literally or under the doctrine of equivalents.

## I. The Complaint Does Not State a Plausible Claim for Direct Patent Infringement

The Complaint does not allege enough facts that plausibly show ITA Group directly infringed the Patents, either literally or under the doctrine of equivalents. The Complaint attempts to plead direct infringement of the Patents against ITA Group by relying, exclusively, on claim

charts attached to the Complaint as Exhibits D, E, and F. *See* Doc. 1, at 2–10. The body of the Complaint alleges BI Worldwide acquired and operates the Bunchball Nitro platform, which uses the technology described in the Patents. *See id*. at 3 ¶¶10–11. However, the body of the Complaint does not include any allegations articulating how ITA Group infringes any particular claim of the Patents. *See id*. at 2–10. Instead, under Counts 1 through 3, the body of the Complaint makes a series of conclusory infringement allegations followed by references to claim charts. Yet the referenced claim charts also do not articulate how ITA Group infringes the Patents. *See* Docs. 1-4, 1-5, 1-6. The claim charts simply reiterate claim language from the Patents and then insert select screenshots of some of ITA Group's webpages without any explanation of how the screenshots plausibly demonstrate infringement. This fails to state a plausible claim for direct patent infringement because it amounts to "a formulaic recitation of the elements of a cause of action" that does not allow the Court "to draw the reasonable inference that [ITA Group] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### A.    The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '764 Patent—Count 1 of the Complaint

Paragraphs 15–30 of the Complaint allege ITA Group infringed claim 10 of the '764 Patent, but those allegations do not attempt to demonstrate infringement. *See* Doc. 1, at 4–6. They instead refer to the claim chart in Exhibit D, which does little to cross BI Worldwide's infringement claim over the plausibility threshold because it contains no articulation at all of how ITA Group infringed the limitations of claim 10 of the '764 Patent. *See Becton, Dickinson*, 616 F.3d at 1253 (Fed. Cir. 2010) (To prove literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly.").

To illustrate, claim 10 of the '764 Patent consists of eight elements, 10[p] and 10[a]–10[g]. *See* Doc. 1, at 5 ¶¶ 18–25; Doc. 1-4. Rather than articulate or otherwise demonstrate how ITA

Group infringed each and every limitation in these elements, the claim chart simply recites the claim language for each element and then inserts screenshots of content from ITA Group's website. *See id*. Specifically, the first column of the claim chart states the claim number, the second column quotes the corresponding claim description, and the third column inserts the screenshots:



**Infringement of U.S. Patent No. 8,768,764 by ITA Group**

| Claim No. | Claim | ITA Group Infringement |
|---|---|---|
| 10[p] | 10. A method comprising | ITA Group's system practices the following method. |
| 10[a] | providing an incentive application from a network site over a data network to a first Web site and a second Web site, wherein the network site is operating on a computer system and wherein the first and second Web sites are operating on different computer systems, the incentive application to be embedded in the first Web site and the second Web site, respectively; | ITA Group's system provides incentive applications from a network site over data networks to web sites. The network site is operating on a computer system and the web sites operate on different computer systems. The incentive application is embedded in the web sites.<br><br>*See* Exhibit I; https://www.itagroup.com/what-we-do/customer-solutions/customer-solutions-technology |

*See, e.g.*, Doc. 1-4, at 2. And although the screenshots in the third column are preceded by an allegation that ITA Group practices the limitations in the corresponding element, those allegations are conclusory on their face because they do not explain how ITA Group practices the claim element. *See id*., at 2–31. Instead, they simply track the language of the claim description almost verbatim and loop in references to "ITA Group's system." *See id*. This fails to state a plausible claim of direct patent infringement, either literally or under the doctrine of equivalents. *See Vervain, LLC v. Micron Techs., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) ("The Complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation.") (quoting *Bot M8*, 4 F.4th at 1353); *see also Parking World Wide, LLC v. City of St. Louis*, 724 F. Supp. 3d 840, 846

(E.D. Mo. 2024) ("Plaintiff's Complaint is composed primarily of conclusory allegations that are insufficient to identify how Defendant's ParkLouie website infringes the [patent].").

Other courts have recognized the same pleading deficiency contained in BI Worldwide's Complaint—i.e., claiming infringement by asserting conclusory allegations that track the language of claim descriptions and attaching screenshots of the accused technology without accompanying factual allegations. In *LS Cloud Storage Technologies, LLC v. Amazon.com, Inc.*, the Western District of Texas analyzed the plausibility of two patent infringement claims that relied "exclusively" on "charts attached to the complaint." No. 1:22-CV-1167-RP, 2023 WL 2290291, at *1 (W.D. Tex. Feb. 27, 2023). The patents related "generally to a data storage system that permits independent access from local hosts connected via I/O channels and independent access from remote hosts and remote storage systems connected via network links." No. 1:22-CV-1167-RP, 2023 WL 2290291, at *1 (W.D. Tex. Feb. 27, 2023). Similar to BI Worldwide's Patents in this case, the patents in *LS Cloud Storage* claimed to overcome prior art. *See id.*; *see also* Doc. 1, at 3 ¶¶ 10–11. The claim charts relied on by the plaintiff in *LS Cloud Storage* included depictions "generally" showing "multiple systems and computers operating together to provide cloud-based storage." *See id.* at 2. However, after analyzing the charts and the included depictions, the Western District of Texas concluded that in light of "the complexity of the technology involved," the "level of specificity" in the plaintiff's claim charts "falls short of the Federal Circuit's *Bot M8* pleading standard." *See id.* at *4. It was not sufficient, the Western District of Texas explained, for the plaintiff's claim charts to show that Amazon practiced "the prior art" and that its technologies simply "relate to the [patents] generally." *See id.* The same is true of BI Worldwide's claim chart. It generically alleges that ITA Group may practice prior art and that its technology relates to the

Patents, but it lacks the level of specificity necessary for the Court to draw the inference that ITA Group plausibly infringes the Patents.

The Western District of Texas is not alone. In *Chapterhouse, LLC v. Shopify, Inc.*, the Eastern District of Texas analyzed the plausibility of patent infringement claims involving "an electronic transaction receipt system that allows digital receipts to be generated from information electronically read from the product and provides additional purchase opportunities to customers." No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *1–2 (E.D. Tex. Dec. 11, 2018). The plaintiff supported its infringement claims with exemplary claim charts that included screenshots of Shopify's technology. *See id*. But like BI Worldwide's claim chart in this case, the plaintiff's complaint and claim charts did not include any factual allegations explaining how Shopify's technology infringed the patents at issue. *See id*. As a result, the court concluded that the allegation of infringement was "a mere conclusory statement" lacking "accompanying factual allegations" that did not "pass the *Iqbal/Twombly* standard." *See id*.

Further, citing the Northern District of Illinois, the District of South Dakota has explained that "'photographs annotated with arrows showing which part of the [Accused Product] is described by the claim and corresponds to each claim limitation' go a long way towards providing a defendant with adequate notice." *HydraAssist LLC v. RK P'ship LLC*, 2022 WL 10552362, at *4 (D.S.D. Oct. 18, 2022) (quoting *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 798 (N.D. Ill. 2020)). Like the plaintiff in *HydraAssist*, however, BI Worldwide's Complaint does not do this. *See id*. Instead, BI Worldwide's Complaint and referenced claim chart simply track the language of claim descriptions and insert screenshot depictions that lack annotations, arrows, or other specific guidance as to how ITA Group's technology practices all the material limitations of

the '764 Patent. This approach is deficient and fails to meet the applicable plausibility standard. *See id*.

In fact, the pleading deficiency in BI Worldwide's Complaint is plainly apparent when the overall complexity of the '764 Patent and its "embedded application" limitation are considered. As the Federal Circuit explained, the degree of detail required to sufficiently plead direct infringement depends on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353.

First, with respect to complexity, the technology at issue in the Patents, including the '764 Patent, involves particular methods of administering incentive programs, which is a relatively complex technology that requires specific steps to be performed in order to infringe. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) ("claims relate[d] to software and firmware for using solid-state memory" deemed "no less complex than that in *Bot M8*".); *see also Chapterhouse*, 2018 WL 6981828, at *1–2.

Second, with respect to the "embedded application" limitation, this is a material limitation that BI Worldwide's Complaint and claim chart in Exhibit D fail to plausibly show ITA Group practices. The prosecution history[1] shows the Patents, including the '764 Patent, were amended to include an "embedded application." *See* Exhs. A–C to Mot. Dismiss. With respect to the '764 Patent, the claim that eventually issued as claim 10 was amended by examiner's amendment to include the following limitation: "<u>wherein the first and second web site are operating on different</u>

---

[1] The patent prosecution history may be considered in ruling on a motion to dismiss under Rule 12(b)(6). *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (explaining "[p]rosecution histories constitute public records" that may be considered when ruling on a motion for judgment on the pleadings under Rule 12(c)); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (analyzing a motion for judgment on the pleadings under Rule 12(c) under "the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)"); *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider . . . matters of public record.") (internal quotation marks omitted).

<u>computer systems, the incentive application to be embedded in the first web site and the second</u>

<u>web site, respectively.</u>" Exh. A to Mot. Dismiss, at 8; Doc. 1-4, at 2. As the Examiner explained,

> The independent claims of the Applicant's invention recite a method, system and medium for remotely facilitating incentive/reward programs for website visitors based on visitor activity. An external system, namely the claimed invention, provides an application for ***embedding*** into websites provided to visitors by website providers.

Exh. A to Mot. Dismiss, at 9 (emphasis added). BI Worldwide cannot prove infringement of its

Patents, including the '764 Patent without proving the practice of embedding an incentive

application in two separate websites. *See id.*; Doc. 1-4, at 1. The embedded application limitation

is therefore material. *See id.* And BI Worldwide has not alleged facts showing ITA Group practices

this material limitation.

The claim chart in Exhibit D addressing the embedded application limitation makes the

conclusory allegation that ITA Group provides an "incentive application that is embedded in the

web sites" and includes a screenshot of ITA Group's website. The claim chart does not make any

other factual allegations showing that ITA Group actually embeds an incentive application in

another website, let alone two other websites. Nor does the claim chart include any annotations or

explanations as to how the screenshot plausibly shows that ITA Group embeds an incentive

application. BI Worldwide's Complaint and accompanying claim chart is therefore conclusory and

lacks the factual content necessary for the Court to draw the inference that ITA Group practices

the material limitation of embedding an incentive application in other websites. *See Chapterhouse*,

2018 WL 6981828, at *1–2 (concluding a claim chart with unexplained screenshots does not meet

the plausibility standard).[2]

---

[2] In fact, as discussed more below, the claim chart in Exhibit F alleges that ITA Group's technology is a software-as-a-service ("Saas"), which undermines the conclusory allegation that ITA Group embeds an incentive application on other websites. *See infra* Argument Section C.

In sum, the allegations in the body of the Complaint and the claim chart in Exhibit D are deficient on their face and fail to state a plausible claim for direct infringement of the '764 Patent because they contain only conclusory statements coupled with screenshots of ITA Group's web content without any articulation of how they show infringement. This alone merits dismissal of BI Worldwide's claim for direct infringement of the '764 Patent. However, when the complexity of the technology at issue and materiality of the embedded application limitation are considered, it is apparent that the Complaint, including the claim chart in Exhibit D, lack the level of specificity necessary for the Court to draw the inference that ITA Group plausibly infringes the Patents.

### B. The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '421 Patent—Count 2 of the Complaint

Like BI Worldwide's claim for infringement of the '764 Patent, the allegations in the body of the Complaint do not attempt to allege facts showing ITA Group infringed claim 12 of the '421 Patent. *See* Doc. 1, at 6–8 ¶¶ 31–45. Rather, the Complaint relies exclusively on the claim chart in Exhibit E, but that claim chart does not contain the factual content necessary to state a plausible claim for infringement of the '421 Patent, either literally or under the doctrine of equivalents.

The same problem that afflicts BI Worldwide's claim for infringement of the '764 Patent and the claim chart in Exhibit D afflicts its claim for infringement of the '421 Patent and the claim chart in Exhibit E. That is, the claim for infringement of the '421 Patent relies exclusively on the claim chart in Exhibit E, but that claim chart contains only repetitive recitations of the claim descriptions coupled with screenshots of ITA Group's web content without any articulation or other demonstration as to how the screenshots show infringement. *See* Doc. 1-5, at 2–27. This, on its own, is deficient on its face and fails to meet the plausibility standard for patent infringement. *See Chapterhouse*, 2018 WL 6981828, at *1–2.

For example, the content in Exhibit E's claim chart does not allow even the inference that ITA Group receives and stores, "at a network site, activity information of a first viewer from a first website of a first provider, the activity information of the first viewer indicating the first viewer's involvement with the first website" as required by claim 12[a]. *See* Doc. 1-5, at 2. Nor does the claim chart allow the inference that the first and second websites are "being provided by different computer systems" as required by claim 12[f]. Doc. 1-5, at 22–27. And like the claim chart in Exhibit D, the claim chart in Exhibit E also fails to allege any non-conclusory facts or include and explanation of the screenshots that suggests ITA Group embeds an incentive application into other websites, as required by several of claim 12's elements. *See* Doc. 1-5, at 2, 10, 11, 14, & 23. Instead, the claim chart recites claim description language, asserts conclusory statements without real factual content, and inserts screenshots without any explanation of how they show infringement.

Also, similar to BI Worldwide's claim for infringement of the '764 Patent, the relative complexity of the technology involved with the '421 Patent and the materiality of the embedded application limitation require a higher level of specificity that is completely absent from BI Worldwide's Complaint, including the claim chart in Exhibit E. *See Bot M8*, 4 F.4th at 1353. Because the technology involved with the '421 Patent and ITA Group's accused technology is relatively complex, and because the embedded application limitation is material, BI Worldwide cannot survive ITA Group's motion to dismiss based on nothing but conclusory allegations and screenshots lacking any supporting explanation as to how they show infringement. Therefore, like the claim for infringement of the '764 Patent, the Court should also dismiss BI Worldwide's claim for direct infringement of the '421 Patent under Rule 12(b)(6).

**C.    The Complaint Does Not State a Plausible Claim that ITA Group Infringed the '339 Patent—Count 3 of the Complaint**

BI Worldwide's claim that ITA Group infringed claim 22 of the '339 Patent suffers from the same overall problem as its two previous infringement claims. The claim for infringement of the '339 Patent relies exclusively on the claim chart in Exhibit F, which lacks factual content and simply recites claim description language followed by screenshots of ITA Group's web content. Like the two previous claims the complexity of the technology and the materiality of the embedded application limitation underscore the lack of adequate specificity in Exhibit F's claim chart.

The '339 Patent relates to a particular system and method of embedding an incentive application on a website. Several limitations setting forth required characteristics for claim 22 of the '339 Patent include:

- "using a processor operating an incentive application logic in communication with a first networked site, embedding an incentive application on a website;"

- "through the embedded first incentive application, generating a first incentive screen at the first networked site;"

- "awarding first incentive information based on information about a first viewer from the network site;"

*See* Doc. 1-6, at 2–16. Claim 22 of the '339 Patent therefore contains a specific requirement regarding which portions of the method are performed by an "incentive application," as opposed to the "processor operation an incentive application logic in communication with a first networked site." *See id*. In particular, claim 22 requires that the incentive application is embedded using a processor that is located in a server and that an incentive screen is generated by that incentive application. *See id*. The specification for the '339 Patent explains that this distribution requirement is important for the invention to enable the incentive application to be "both portable onto other

sites and . . . customizable on each site to the information provided on the site." *See* Doc. 1-3, at 24.

The Compliant, including Exhibit F's claim chart, fails to allege facts that support a reasonable inference that ITA Group generates an incentive screen through an embedded incentive application. The claim chart states that ITA Group's system is a software-as-a-service ("SaaS") technology platform that would "necessarily have a server with a hardware processor and logic stored in the memory." *See* Doc. 1-6 at 1. And with respect to element 22[b], BI Worldwide further alleges that "ITA Group's system generates incentive screens on network sites." *Id*. at 6. However, element 22[b] requires an incentive screen that is generated by "the embedded first incentive application," rather than the processor operating an incentive application logic. *Id*. at 3, 6. Indeed, BI Worldwide makes no distinction between steps that are required to be performed by the processor operating an incentive application logic and steps that are required to be performed by the incentive application. *See id.*, at 13 ("ITA Group's system awards incentive information based on information about viewers from the network site stored on the server." *Id*. at 13); *id*. at 6 ("ITA Group's system generates incentive screens on network sites."). No meaningful factual allegation is provided to support a reasonable inference of satisfying the requirement of generating an incentive screen with an embedded incentive application (as opposed, for example, to simply generating the incentive screen through the hardware processor and logic that is located on the server). As mentioned above, the limitation of the use of an embedded incentive application is highly material to the allowability of the Patents, including the '339 Patent, and BI Worldwide's failure to explain how this limitation is met indicates that its infringement claim lacks plausibility. *See Vervain*, 2022 WL 23469, at *5 ("In cases involving complex technology, a complaint nakedly

alleging that the accused product practices the claimed invention's point of novelty will rarely suffice.").

Additionally, BI Worldwide's conclusory assertion about which components of the system perform which steps conflicts with other allegations in the Complaint. Specifically, BI Worldwide alleged earlier that the "the incentive application is embedded in the web sites and awards incentive information to the viewer." Doc. 1-4, at 14. Yet, BI Worldwide elsewhere alleged that "ITA Group's system awards, *by a network site*, incentive information to the viewers based on the activity information of the viewers." Doc. 1-6, at 13) (emphasis added). These conflicting allegations confirm that BI Worldwide's conclusory assertions regarding the '339 Patent lack a sufficient factual basis.

Not only do BI Worldwide's factual allegations fail to prove direct infringement of the '339 Patent, they actually tend to disprove infringement. Apparently, to satisfy the claim limitation that requires the embedding of an incentive application, BI Worldwide's claim charts in Exhibits D, E, and F rely on content from ITA Group's website indicating that ITA Group's platform "Integrate[s] with existing systems." *See* Doc. 1-6 at 6. However, the claim chart in Exhibit F alleges that ITA Group's platform is a SaaS technology platform. *Id*. at 2. SaaS platforms operate by providing users with remote access to software, obviating the need to download and run the software on individual machines. So if ITA Group's platform is SaaS, as BI Worldwide alleges in Exhibit F's claim chart, then the software that is provided would reside on ITA Group's servers and not be embedded into an exterior location as required by the Patents' claims, including claim 22 of the '339 Patent. This is apparent from BI Worldwide's included exhibits. *See Id*. at 6. ("The platform can also house all customer data and prompt digital communication and other touchpoints.").

As a result, BI Worldwide's Complaint, including the claim chart in Exhibit F, lacks the necessary factual content to state a plausible claim that ITA Group directly infringed the '339 Patent, whether literally or under the doctrine of equivalents. In fact, some of BI Worldwide's allegations conflict and tend to disprove infringement, particularly with respect to the material embedded application limitation. Therefore, along with the two previous infringement claims, the Court should dismiss BI Worldwide's claim for direct infringement of the '339 Patent under Rule 12(b)(6).

## II.    The Complaint Does Not State a Plausible Claim for Indirect Patent Infringement

In addition to direct infringement, the Complaint also claims ITA Group indirectly infringed the Patents. But because the Complaint fails to state a plausible claim for direct infringement, as discussed above, the Complaint necessarily fails to state a claim for indirect infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012). The Court should therefore dismiss the balance of BI Worldwide's Complaint, including its claims for indirect infringement of the Patents. *See id*.

### CONCLUSION

For these reasons, ITA Group respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint without prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

ITA GROUP, INC.*, Defendant,*

By: */s/Nicholas F. Miller*
Nicholas F. Miller, Iowa AT0015361
Brian J. Laurenzo, Iowa AT0004513
Allison M. Steuterman, Iowa AT007558
Charles E. Forney, Iowa AT0015711
Jack A. Hatanpa, Iowa ATAT0015724
**BRICK GENTRY, P.C.**
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
Telephone: (515) 274-1450
Facsimile: (515) 274-1488
Email: nick.miller@brickgentrylaw.com
        brian.laurenzo@brickgentrylaw.com
        allison.steuterman@brickgentrylaw.com
        charles.forney@brickgentrylaw.com
        jack.hatanpa@brickgentrylaw.com

## CERTIFICATE OF SERVICE

I certify that on May 26, 2025, a copy of the foregoing pleading was electronically filed with the Clerk of Court. All parties of record registered with the CM/ECF filing system will receive notification of such filing through CM/ECF. Parties of record not registered with the CM/ECF filing system will be provided notification of this filing by U. S. Mail.

By:   */s/ Nicholas F. Miller*
      Nicholas F. Miller